**Arvilla M. HECKER, Plaintiff and Appellee,**

v.

**George HECKER, Defendant and Appellant.**

**Civ. No. 890062.**

Supreme Court of North Dakota.

Nov. 20, 1989.

Howe, Hardy, Galloway & Maus, P.C., Dickinson, for plaintiff and appellee; argued by Gerald D. Galloway, Dickinson.

William G. Heth, argued, Dickinson, for defendant and appellant.

ERICKSTAD, Chief Justice.

George Hecker appeals from a district court judgment granting Arvilla Hecker a divorce from him. George asserts on appeal that the trial court's distribution of marital property is clearly erroneous. We disagree and, accordingly, affirm the divorce judgment.

George and Arvilla were married on May 1, 1959. At the time of their marriage, George was 50 years old and Arvilla was 38 years old. It was George's first marriage and the second for Arvilla, whose first husband was killed in World War II. Arvilla, who had a daughter from her first marriage, lived in South Heart and was employed as a postmistress during the parties' marriage until her retirement in 1982. George ran a small grain farming and livestock operation in Billings County until his retirement in 1972, when the farmland, machinery, and livestock were sold. During this period, George occasionally held other jobs to supplement the farm income. The parties had two sons, both of whom are now adults.

At the time of the divorce trial in October 1988, George was 80 years old and was in relatively good health. He currently receives $992 per month in social security benefits and disability benefits from a previous work-related shoulder injury. Arvilla was 68 years old, had been diagnosed as having cancer, and was undergoing treatment. She currently receives $993 per month in retirement benefits. The parties' marital estate totaled approximately $450,000 and mostly consisted of liquid assets. The trial court awarded Arvilla property valued at $268,024.31 and awarded George property valued at $188,234. No spousal support was requested by either party.

Section 14–05–24, N.D.C.C., requires the trial court to distribute divorce litigants' real and personal property "as may seem just and proper." A trial court's determination on matters of property division are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Anderson v. Anderson*, 368 N.W.2d 566, 568 (N.D.1985). A finding of fact is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Gabel v. Gabel*, 434 N.W.2d 722, 723 (N.D.1989). Although a property division need not be equal in order to be equitable, any substantial inequality must be explainable. *Anderson v. Anderson*, 390 N.W.2d 554, 556 (N.D.1986); *Volk v. Volk*, 376 N.W.2d 16, 18 (N.D. 1985).

The trial court found that when the parties were married in 1959, Arvilla "owned her own family residence in South Heart, North Dakota, absent any indebtedness thereon, together with five residential lots at said location, a recent [model] automobile free of indebtedness, and $30,000.00 in savings." The court further found that George "owned no real estate interests, but did own a line of farm machinery, fifty head of cattle, a recent [model] pick-up and farm truck, absent any indebtedness ..., and had $20,000.00 in savings." The court determined that Arvilla came to the mar-

riage with "substantially more property" than George. George asserts that this finding is clearly erroneous.

We initially note that the parties presented no evidence as to the value of Arvilla's home or George's farm machinery and cattle at the time of the marriage. George had at least an equal responsibility to submit evidence of the 1959 value of the property. *See Hoge v. Hoge*, 281 N.W.2d 557, 561 (N.D.1979); *Nastrom v. Nastrom*, 262 N.W.2d 487, 492 (N.D.1978). However, even if the trial court's determination that Arvilla entered into the marriage with substantially more property than George is clearly erroneous, we nevertheless are not left with a definite and firm conviction that the trial court made a mistake in its ultimate distribution of the parties' marital property. *See Dick v. Dick*, 414 N.W.2d 288, 291 (N.D.1987). Viewing the record as a whole, the disparity in the amounts of property awarded to the parties is explainable in this case.

The trial court noted that George and Arvilla "came to their marriage having been previously self-supporting and continued that attitude throughout" the course of their 29–year marriage. Arvilla maintained a separate checking account and made independent investments without George's participation throughout the marriage. Likewise, George had complete control over the operation of the farm and maintained a checking account which, although jointly held with Arvilla, was considered by the parties to be his independent account. The trial court also found that Arvilla provided the substantial majority of the parties' income throughout the course of the marriage. Arvilla received income from her employment as a postmistress as well as income from investments made previously. The record reflects that George's farm and ranch operation showed a net loss for most of the years of the marriage and that its continued operation was substantially assisted by Arvilla's earnings. The trial court found that Arvilla contributed more than $11,000 "over the course of the marriage so as to assist [George] in the acquisition of real property used for his farming and livestock operation, and for

the acquisition of livestock." Proceeds from the sale of the farm and ranch operation were placed in an account over which George had primary control.

Moreover, the trial court found that the failure of the marriage was attributable in large part to George's "antagonistic attitude and cantankerous behavior" toward Arvilla and her daughter from her first marriage. The record also shows that Arvilla maintained the family household and was largely responsible for raising the parties' two sons and contributing to their educational expenses. Arvilla continued working as a postmistress for approximately 10 years after George's retirement and the income she earned during this period contributed substantially to the marital estate. The court also found that Arvilla's necessities at the present time are "of greater magnitude" than are George's because she is suffering from and receiving treatment for cancer. These factors are all proper considerations under the *Ruff–Fischer* guidelines. *See Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

George also asserts that the property division is clearly erroneous because the court accepted Arvilla's valuations of various bank and other investment accounts rather than his own. However, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Roen v. Roen*, 438 N.W.2d 170, 172 (N.D.1989). We believe the trial court was clearly justified in accepting the valuations given by Arvilla. The court specifically noted George's "willful disregard" of an interim court order and his "apparent refusal to provide to his legal counsel definitive financial information which could have been received by this Court as evidence in the foregoing litigation...." The court also noted in its decision that George "failed to offer competent evidence to explain the source of funds that generated $4,420.00 in interest as reported ... upon his 1987 Individual Income Tax Return." The values set by the trial court were within the range of the evidence and, accordingly, are not clearly erroneous.

Upon a review of the entire record, we cannot say that the trial court's distribution of the parties' marital property is clearly erroneous. Accordingly, the judgment is affirmed.

GIERKE and MESCHKE, JJ., concur.

LEVINE and VANDE WALLE, JJ., concur in the result.