**Kenneth L. LUCY, Plaintiff and Appellee,**

v.

**Shirley M. LUCY, Defendant and Appellant.**

**Civ. No. 890384.**

Supreme Court of North Dakota.

June 1, 1990.

---

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant and appellant; argued by Donald L. Peterson.

Ella Van Berkom Law Firm, Minot, for plaintiff and appellee, argued by Steven C. Farhart.

ERICKSTAD, Chief Justice.

Shirley M. Lucy appeals from a divorce judgment of the district court for Burke County, awarding her alimony, partial attorney fees, and dividing the property. We affirm in part, reverse in part, and remand for further proceedings.

Shirley and Kenneth L. Lucy were married on October 25, 1957, when Shirley was 19 and Kenneth 24. Shirley is a high school graduate and has completed one year of college. Kenneth's formal education ended after the ninth grade. During the course of their marriage, the parties accumulated and farmed over thirteen hundred acres of farmland.

The parties have six children, all of whom are now adults. Shirley took primary responsibility for raising the children. As well as doing part of the farm work, Shirley contends that starting in 1982 she had to engage in unskilled jobs such as waitressing and carpentry to supplement the parties' income due to the debt of the farm operation. While Kenneth concedes that some of Shirley's income was used for bills, he contends that her outside employment was not necessary and was against his wishes.

Shirley contends that throughout the marriage, Kenneth engaged in a pattern of frequent verbal and physical abuse toward her. Kenneth denies that he was abusive to Shirley throughout their marriage, but does concede that on one occasion after the commencement of the divorce action, the parties became involved in an argument which escalated into an assault upon Shirley. At the time of the divorce, Shirley was 51 years of age and apparently suffered from an irregular heartbeat and undiagnosed lung problems which do not appear to be disabling; Kenneth was 56 and had been diagnosed as suffering from multiple sclerosis, which is a progressive and debilitating disease.

Shirley apparently left the farmstead and moved to Tioga in July of 1986. Kenneth commenced this divorce action in May of 1988. The trial court granted the divorce, and divided the property awarding alimony to Shirley.

The gross value of the parties' property was valued at approximately $480,000, with an indebtedness of $348,000, leaving a net value of $132,000. Kenneth received all of the land accumulated by the parties along with the debt thereon. Kenneth was also awarded his guns, all farm machinery except the garden tractor, all mineral acres except for 90 acres inherited by Shirley from her parents, all the vehicles except the 1982 Cadillac, and all the livestock.

Shirley received her selection of the household furniture. She also received the garden tractor, 90 mineral acres, N.S.P. stock, and the 1982 Cadillac. According to valuations accepted by the trial court, the items awarded to Shirley amounted to $19,715. She also received an ASCS payment of $1,985, making a total of $21,700. Kenneth was ordered to pay $1,000 of Shirley's attorney fees and to pay alimony to Shirley in the amount of $72,000, at the rate of $600 per month for a period of 120 months without interest.

On appeal, Shirley questions the fairness of the property division, the alimony award, and the amount of the attorney fees awarded.

## PROPERTY AND ALIMONY

Shirley contends that awarding Kenneth the vast majority of the assets of the $132,000 net value of the parties was clearly erroneous.

The trial court's determinations on matters of property division are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. *Dinius v. Dinius*, 448 N.W.2d 210, 215 (N.D. 1989). A finding of fact is determined to be clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Dinius* at 211; *Bashus v. Bashus*, 393 N.W.2d 748, 750 (N.D.1986).

Section 14–05–24, N.D.C.C., provides in part that a court must make equitable distribution of the real and personal property of the parties as may seem just and proper. An equitable distribution need not be equal, but any substantial inequality must be explainable. *Hecker v. Hecker*, 448 N.W.2d 207, 208 (N.D.1989). The factors to be considered by a court in determining a fair and equitable distribution include:

"(a) the respective ages of the parties;

"(b) the parties' earning abilities;

"(c) the duration of the marriage and conduct of each of the parties during the marriage;

"(d) the parties' station in life;

"(e) the circumstances and necessities of each of the parties;

"(f) the parties' health and physical condition;

"(g) the parties' financial circumstances as shown by the property owned at the time of the marital dissolution, its value, its income-producing capacity (if any), and whether it was accumulated before or after the marriage; and,

"(h) other material matters."

*Volk v. Volk*, 404 N.W.2d 495, 497 n. 1 (N.D.1987); *See Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952).

The trial court made the following relevant findings of fact in coming to its decision:

"IV.

"The Plaintiff [Kenneth] is 56 years of age, and the Defendant [Shirley] is 51 years of age.

"V.

"There is direct evidence of violent misconduct on the part of the Plaintiff, and circumstantial evidence of other misconduct on the part of the Defendant.

"VI.

"The Plaintiff does not have a high school education and has been a farmer all his life. His skills are in farming, cattle raising, and marketing.

"VII.

"The Defendant is a high school graduate, with one year of college. She has had employment as a waitress and carpenter, and has developed farming skills during the marriage.

"VIII.

"The Defendant has health problems, including an irregular heartbeat and undiagnosed lung problems, none of which appear to be disabling at this time.

"IX.

"The Plaintiff is suffering from multiple sclerosis, which is a progressive and debilitating disease. His ability to continue work is speculative and uncertain.

"X.

"The parties hereto have agreed the value of the land owned by them and acquired during the marriage is $252,000. The Court accepts the values of the Plaintiff relating to livestock, vehicles, farm machinery, guns, miscellaneous personal property and stock. The Court accepts the value of the Defendant relating to household furniture and furnishings."

While there is a disparity in the value of the property distributed to the parties, Kenneth contends that the difference is offset by the alimony award of $72,000 given to Shirley. In the trial court's memorandum opinion, the alimony award is listed under the heading "Distribution of Property." While contending that the alimony award was spousal support, Shirley concedes that the alimony award may very well have been part of the property distribution because the trial court did not otherwise address the disparity in the division.

■ We have recognized that alimony may sometimes be used as part of a property division. *Redlin v. Redlin*, 436 N.W.2d 5, 8 (N.D.1989). However, we have also held that periodic cash payments without interest awarded as part of a property distribution must be discounted to present value in determining whether or not the distribution is equitable. *Pankow v. Pankow*, 371 N.W.2d 153, 154 (N.D.1985); *Tuff v. Tuff*, 333 N.W.2d 421, 424 (N.D.1983). In the case at hand, it appears the trial court took the $72,000 figure into account in attempting to fashion an equitable distribution. Assuming for sake of discussion purposes, that the trial court was attempting to use the alimony award to make an equitable property distribution, we are unable to determine whether or not such an award is equitable without a present value determination. We, therefore, must remand the case to the trial court for a determination of the present value of the monthly payments awarded to Shirley and to reassess the distribution in light of this value.

SUPPORT

■ In assuming that the trial court used the alimony award as an offset in the property division, Shirley contends that the trial court erred in not awarding her any spousal support. She asserts that she has been disadvantaged by the divorce because she has been forced to leave the farm to seek employment and housing. Because Kenneth received a majority of the income-producing property, and because she is 51 years old and has had limited training, Shirley contends that she will not be able to be rehabilitated to the level she enjoyed dur-

ing the marriage and thus, should have been awarded permanent spousal support.

Based upon the trial court's finding that Shirley is a high school graduate, with one year of college, has had employment as a waitress and carpenter, and has developed farming skills during the marriage, Kenneth contends that Shirley is in no need of rehabilitation, has not been disadvantaged by the divorce and thus does not require spousal support.

█ A trial court's determination on the matter of spousal support is treated as a finding of fact and will not be set aside unless clearly erroneous. *Branson v. Branson*, 411 N.W.2d 395, 398 (N.D.1987). The trial court did not make any specific findings as to whether or not Shirley was employable or was in need of either rehabilitative or permanent spousal support. Therefore, we assume that the trial court determined that Shirley was not entitled to spousal support and analyze that conclusion in light of the clearly erroneous standard. Section 14–05–24, N.D.C.C., leaves the determination of an award for spousal support within the discretion of the trial court, depending upon the facts and circumstances of each case. *Oviatt v. Oviatt*, 355 N.W.2d 825, 827 (N.D.1984).

In *Martin v. Martin*, 450 N.W.2d 768 (N.D.1990), Sue Martin appealed from a divorce decree, challenging the trial court's finding that she was employable, the sufficiency of the support awarded and the termination of the award at age 65. Sue was 49 or 50 at the commencement of the divorce action and suffered from cerebral arterial ventrical malformation (a tangled pool of blood vessels). From this congenital and inoperable condition, Sue experienced "epileptic-like seizures," headaches, and fear of paralysis or death. Her husband, Lynn, who was two years older than Sue, was apparently in good health.

The trial court determined that despite her medical problems, Sue was employable, although her:

"limited education and work experience off the farm would likely qualify her for little more than minimum wage employment.

\* \* \* \* \* \*

"Assuming the ability to earn a modest income at minimum wage and further assuming a reasonable return on capital, Sue will still be in need of spousal support. Because of the limited number of remaining productive years, any meaningful re-training probably could not be accomplished. I find that Sue should receive alimony of $500.00 per month payable until her remarriage, death, or until she attains age 65, whichever is the first to occur."

*Martin* at 770.

Based upon the trial court's detailed findings, we affirmed its determination that Sue was employable and concluded that the support award of $500 per month was not inadequate or clearly erroneous. Upon reviewing the termination of the award at age 65, however, we said:

"But the trial court did not disclose why it thought Sue would be able to fully provide for herself after age 65. And, there was neither evidence nor a finding about the potential offsetting effect of social security, if any. Since we do not understand the reason for scheduling Sue's support to end at age 65, we reverse that provision without disturbing the direction that support terminate at her remarriage or death." [Cite omitted.]

*Martin* at 771.

However, *Martin* is distinguishable from the case at hand. While the parties in the two cases are similar in age, Sue Martin was suffering from serious health problems, while Lynn Martin was healthy. These facts supported a spousal support award in favor of Sue, despite the finding by the trial court that she was employable. In the case at hand, while Shirley does seem to be suffering from some minor health problems, Kenneth is the party with the most serious health problem, multiple sclerosis, a possibly debilitating disease. Also, the trial court found that Shirley does have some work experience beyond that of the farm.

This Court has previously stated that an award of spousal support must be considered in light of the supporting spouse's needs and ability to pay support. *Branson, supra* at 398. Also, courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property. *Pankow v. Pankow, supra* at 157. While Kenneth did receive a majority of the income-producing property, it is saddled with debt and his physical condition may soon become a factor in his productivity. Under the circumstances, including Kenneth's precarious health, the huge debt and current farming conditions which the trial court could take judicial notice of, contrasted with Shirley's reasonably good health and some earning capacity, we do not conclude that the trial court's failure to specifically provide for spousal support was clearly erroneous. However, the trial court should retain jurisdiction over spousal support in the event there is a significant change of circumstances warranting a later award of spousal support. *Branson v. Branson,* 411 N.W.2d 395, 398–99 (N.D.1987).

## ATTORNEY FEES

Shirley contends that Kenneth should be responsible for the entire amount of her attorney fees because he initiated the divorce action and thus she was forced to defend herself. The trial court awarded Shirley partial attorney fees in the amount of $1,000, although she was seeking $3,500.

The trial court has authority to award attorney fees in a divorce. Section 14–05–23, N.D.C.C. The trial court's discretion in awarding attorney fees in a divorce action will not be disturbed on appeal unless the party appealing affirmatively establishes that the trial court abused its discretion. *Bagan v. Bagan,* 382 N.W.2d 645, 649 (N.D.1986). We have also said that an award of attorney fees must be supported by evidence. *McIntee v. McIntee,* 413 N.W.2d 366, 367 (N.D.1987); *McDonough v. McDonough,* 395 N.W.2d 149, 150 (N.D.1986). The factors to be con-sidered by the trial court when awarding attorney fees include the property owned by each party as a result of the property division, the relative income, whether the property is liquid or fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case. *McDonough, supra* at 150; *Jondahl v. Jondahl,* 344 N.W.2d 63, 73 (N.D. 1984).

The evidence indicates that Kenneth had $3,000 of his attorney fees paid from the estate of the parties. During cross examination, Kenneth responded to questions as follows:

"Q Now, you said that you are indebted to the Powers Lake Bank in the sum of $24,000.

"A Correct.

"Q When did you incur that debt?

"A Well, it would be from the fall of 1988 for operating loans.

"Q That's after you commenced or during the time when you commenced the divorce against your wife, isn't it?

"A Yes, it would be.

"Q And did part of that $24,000 go to your attorney for fees?

"A Yes, it did.

"Q How much of that $24,000 went to your attorney's fees?

"A $3,000."

The $24,000 debt to the Powers Lake Bank (Liberty State Bank) was listed as a liability in Kenneth's property and debt listing filed with the trial court which was used in determining the net value of the estate. Under the circumstances, there does not appear to be a reason why Shirley should be awarded less than what Kenneth paid in attorney fees. Accordingly, we find the $1,000 award of attorney fees to Shirley to be an abuse of discretion.

Because of our holding relative to the lack of a determination of present value of the monthly payments and the need for a redetermination of distribution of assets in that light, especially as no interest was

required on the monthly payments, and to preserve the possibility of an award in the future of spousal support, we remand for those purposes and for an equalization of attorney fees requiring an additional award to Shirley for attorney fees in the amount of $2,000.  Shirley is also entitled to costs on appeal in light of these adjustments in the judgment.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.