**Ralph Emanuel NESS, Plaintiff, Appellant and Cross–Appellee,**

v.

**Elisabeth C. NESS, Defendant, Appellee and Cross–Appellant.**

**Civ. No. 900204.**

Supreme Court of North Dakota.

April 2, 1991.

Donald L. Peterson (argued), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff, appellant, and cross-appellee.

Jonathan C. Eaton (argued), of Eaton, Van de Streek & Ward, Minot, for defendant, appellee, and cross-appellant.

MESCHKE, Justice.

Ralph Ness appealed, and Elisabeth Ness cross-appealed, from a judgment granting the parties a divorce, dividing the marital property, and awarding spousal support for Elisabeth. We affirm the judgment and remand for correction of an order about temporary support during this appeal.

At the time of their marriage in 1985, Ralph was 76 years of age and Elisabeth was 62 years of age. There was no pre-nuptial agreement. In February 1987 the parties separated and Ralph sued for divorce. An attempted reconciliation was ultimately unsuccessful.

The trial court entered judgment on May 1, 1990. The judgment ordered Ralph to pay Elisabeth $5,000 within 90 days of the entry of judgment. Elisabeth was also awarded twenty-five percent of the income received from Ralph's mineral interests for a period of five years, terminable upon Ralph's death or Elisabeth's death or remarriage. In the event that Ralph died before Elisabeth received $15,000 from the mineral interest payments, she was guaranteed payment up to $15,000 from his estate.

While this appeal was pending, a dispute arose over payment of interim support and payment of Elisabeth's costs and legal fees on appeal. We remanded to the trial court, which denied Elisabeth's motion for payment of costs and legal fees for the appeal and ordered recommencement of interim support of $500 per month effective October 1, 1990.

■ Ralph asserts that the trial court's $5,000 lump sum award and the award of twenty-five percent of the income from his minerals to Elisabeth are clearly erroneous. To begin, we must sort out the apparent confusion over whether these awards constitute property division or spousal support.

The trial court's award of the $5,000 states:

[Elisabeth] is to receive from [Ralph] the sum of $5,000.00 cash to be paid within 90 days from the filing of the entry of judgment herein. This payment is necessary to assist [Elisabeth] in her adjustment and transitional needs from married life to single life.

The court's statement that this award is to assist Elisabeth in her "adjustment and transitional needs" clearly marks this payment as spousal support.

The trial court's award of the income from Ralph's mineral interests states:

[Elisabeth] is to receive a 25% income interest for a period of five years from the date of the filing of the entry of judgment herein in all oil and gas income from the minerals owned by [Ralph] at the time of the marriage, and [Elisabeth] shall bear any tax consequences on said income. This income is to terminate upon the death or remarriage of [Elisabeth] or upon the death of [Ralph]. In the event of [Ralph's] death before the payment of $15,000.00 from this provision, [Elisabeth] is to be awarded from [Ralph's] estate the difference between $15,000.00 and any amount paid pursuant to this paragraph.

Classification of periodic payments as either spousal support or property division often turns upon whether payments are to terminate upon the death or remarriage of one spouse. *See Rustand v. Rustand,* 379 N.W.2d 806, 808–809 n. 2 (N.D.1986); *Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.

1984). Payments that are to terminate upon the receiving spouse's death suggest spousal support; payments that do not so terminate suggest property division. *Rustand; Seablom.* Because the need for spousal support ends with the obligee's death, payments that terminate upon the obligee's death fulfill the purposes of spousal support. However, where payments continue after the obligee's death, inuring to the benefit of the obligee's estate, the purposes of spousal support are not fulfilled. *See Rustand; Seablom.*

█ We also note that the trial court's award of income from the mineral interests provides that Elisabeth "shall bear any tax consequences on said income." While periodic payments in the nature of property division are not taxable to the recipient spouse, spousal support payments are deductible by the payor spouse and taxable to the recipient spouse. *See Stoelting v. Stoelting,* 412 N.W.2d 861 (N.D.1987); I.R.C. §§ 71 and 215 (1990). The requirement that Elisabeth bear the tax consequences on these payments is a clear indication that they were intended as spousal support. Because the award of income from the mineral interests is to terminate upon Elisabeth's death or remarriage, and because Elisabeth is to pay taxes on these payments, we conclude that they are in the nature of spousal support.

We turn to Ralph's assertion that the trial court's award of spousal support is clearly erroneous. Ralph argues that Elisabeth is not disadvantaged by the divorce and that she is not in need of spousal support.

█ A trial court's determination of spousal support is a finding of fact, which will not be set aside on appeal unless clearly erroneous. *Lucy v. Lucy,* 456 N.W.2d 539, 543 (N.D.1990). Although findings of fact that disclose the reasons for the trial court's decision aid appellate review, an express finding on every possible point is not necessary. *Pfliger v. Pfliger,* 461 N.W.2d 432, 436 (N.D.1990). When the trial court fails to fully explain an award of spousal support, we will not upset it if the reasons are fairly discernible by deduction or inference. *Id.* Although the trial court's findings of fact and conclusions of law in this case are hardly a model of clarity or completeness, we think that we comprehend the trial court's reasons.

There is evidence to support an inference that Elisabeth was economically disadvantaged by the marriage. Testimony established that the parties set up joint savings and checking accounts to pay marital expenses. The evidence indicated that during the course of the marriage Elisabeth contributed over $5,000 more to those joint accounts than Ralph. In addition, Elisabeth's marriage to Ralph caused a permanent reduction of $100 per month in her survivor's benefits under railroad retirement.

Ralph also challenges the amount of spousal support, asserting that Elisabeth has sufficient assets to provide for herself. We do not, however, substitute our judgment for that of the trial court. We will only disturb an award of spousal support if it is clearly erroneous. *Lucy,* 456 N.W.2d at 543. We conclude that this award of spousal support is not clearly erroneous.

█ Elisabeth argues that the trial court erred in holding that the entry of judgment terminated its prior order awarding temporary support payments. We agree.

On June 21, 1988, the trial court ordered Ralph to pay Elisabeth temporary support of $500 per month. After judgment was entered and both parties appealed, Ralph stopped making those payments. Elisabeth secured a remand to the trial court and sought an order directing Ralph to continue the interim support payments. The trial court denied the motion, ruling that "the lack of any reference to interim support in the divorce decree operates as a hiatus of support obligations." The court, apparently believing it was without authority to award interim support for the period between the entry of judgment and its ruling on the motion, ordered that the interim payments recommence effective October 1, 1990.

The trial court misconstrued North Dakota law. The trial court may award tempo-

rary support "[d]uring any time in which an action for divorce is pending" and, unless challenged within five days of service, an order awarding temporary support "shall be final and nonappealable pending a final determination of the issues raised by the pleadings or until further order of the court." NDCC 14–05–23. Construing that statute in *Rudel v. Rudel,* 279 N.W.2d 651, 658 (N.D.1979), this court held that "a temporary support order under our statute continues in force if an appeal is taken from the judgment even though no reference is made in the judgment continuing the order." Thus, *Rudel* makes it clear that, if an appeal is taken from a divorce judgment which is silent as to the temporary support order, the order continues in effect until the case is finally determined or until further order of the court. *See also Raszler v. Raszler,* 80 N.W.2d 535, 538 (N.D.1956). These precedents apply here.

There is a strong policy behind this result. When an appeal is taken from a divorce judgment, the spouse receiving temporary support will, in most cases, still be in need of financial assistance. The recipient spouse ordinarily will not receive the benefits of the divorce decree during the appeal. For example, *see Davis v. Davis,* 458 N.W.2d 309, 311 (N.D.1990). Usually, the parties' financial situations will remain unchanged until after the appeal is decided. Accordingly, a spouse in need of temporary support before trial will in all likelihood be in need of temporary support during the pendency of an appeal. If extraordinary circumstances exist which indicate that the parties' financial situations have changed, the trial court can make provisions in the judgment or in a post-judgment order altering or terminating the temporary support order.

In this case the judgment is silent as to the temporary support order. Accordingly, the order remained in effect during the pendency of the appeal until the court replaced it with the order effective October 1, 1990. The trial court erred in holding that the temporary support order had automatically terminated upon entry of the judgment on May 1, 1990.

We have considered the other issues raised by the parties and find them to be without merit. We affirm the judgment but remand for entry of an order directing that Ralph pay Elisabeth temporary support pursuant to the interim order for the period between May 1, 1990, and October 1, 1990.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

GIERKE, Justice, concurring and dissenting.

I concur in those portions of the majority opinion which affirm the award of $5,000 to Elisabeth, determine that both awards to Elisabeth were in the nature of spousal support, hold that the temporary support order remained in effect pending the appeal, and that part which denies the cross appeal.

Recognizing the constraints of our standard of review under Rule 52(a), N.D.Rules Civ.Proc., I dissent to that portion of the majority opinion which affirms the award of 25% of Ralph's mineral income to Elisabeth.

Given the short duration of this marriage, less than two years from the date of the marriage to the date of separation, the age of the parties, and the financial independence of both parties, both before and after the marriage, I am firmly convinced that a mistake was made in awarding 25% of Ralph's mineral income to Elisabeth. There is no rationale which I can discern to support that award. There are certainly no findings of fact to support the award, or for that matter the award of the $5,000 in cash. The majority opinion in effect acknowledges that when it states:

"Although the trial court's findings of fact and conclusions of law in this case are hardly a model of clarity or completeness, we think that we comprehend the trial court's reasons.

There is evidence to support an inference that Elisabeth was economically disadvantaged by the marriage. Testimony established that the parties set up joint savings and checking accounts to pay marital expenses. The evidence indi-

cated that during the course of the marriage Elisabeth contributed over $5,000 more to those joint accounts than Ralph. In addition, Elisabeth's marriage to Ralph caused a permanent reduction of $100 per month in her survivor's benefits under railroad retirement."

The trial court makes absolutely no reference to the reduction of $100 per month in Elisabeth's survivor's benefits under railroad retirement. With regard to the excess contribution of $5,000 by Elisabeth which was referred to in the majority opinion, the trial court made the following finding of fact:

"Any pattern of shared expenses during the marriage was conceptual only and fell short of the stature and dignity of a formal agreement between the parties."

In its memorandum opinion the trial court stated with regard to allocation of expenditures during the marriage:

"Much testimony was presented regarding this aspect. The testimony is so vague, conflicting and confusing as to make it impossible for the Court to make a meaningful finding regarding the relative contributions of the parties vis-a-vis any alleged agreement as to these living expenses."

Assuming that there is support in the record for some disparity in the contributions by the parties to the joint accounts and some disadvantage to Elisabeth with regard to the railroad retirement payment, this disparity would be amply compensated for by the award of the $5,000, the temporary support that Ralph is ordered to pay, and the fact that Ralph was ordered to pay $2,000 of Elisabeth's attorneys fees.

This was the second marriage for Ralph, his first being one of 44 years, during which he accumulated all of his assets, including the mineral interests in question here. It was a third marriage for Elisabeth. She, too, had accumulated her assets prior to this marriage. Both parties made inter vivos gifts of most of their assets to their respective children. In reviewing the guidelines enumerated in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), the

trial court really found that they favored neither party, with the possible exception that in making their respective inter vivos transfers to children in anticipation of this divorce, perhaps Elisabeth retained less control and put herself in a more tenuous financial position than did Ralph. I'm not sure that she should be rewarded, nor should Ralph be punished, for that.

These two parties attempted a marriage in the autumn of their lives. It didn't work and lasted less than two years before separation. They each came into the marriage with significant income and property. They treated their property separately during the marriage. The trial court found that there was not any significant amount of fault on the part of either party and further that neither party would be disadvantaged by the divorce other than the mutual loss of society and companionship and certain economic security. I believe that, with the exceptions noted above, each should have emerged from this marriage as they entered it. I, therefore, respectfully dissent from that portion of the majority opinion which affirms the award of 25% of Ralph's mineral income to Elisabeth.