**Judy A. WAHLBERG, Plaintiff and Appellee,**

v.

**James A. WAHLBERG, Defendant and Appellant.**

**Civ. No. 910169.**

Supreme Court of North Dakota.

Jan. 13, 1992.

Carol K. Larson of Pringle & Herigstad, P.C., Minot, for plaintiff and appellee.

Lynn M. Boughey, Minot, and Kammey M. Kuehn, third year law student, for defendant and appellant.

VANDE WALLE, Justice.

James A. Wahlberg appealed from that portion of a judgment of divorce which awarded spousal support to Judy Wahlberg and from an order denying his motion to modify the judgment. We affirm.

James and Judy were married in 1968 and have three adult children. When married, James had a bachelor's degree; during the marriage, he completed masters and doctorate degrees in social work. James is Associate Professor and Director of Social Work and Criminal Justice Studies at Minot State University. When married, Judy was a Registered Nurse with a diplo-ma certificate, and she is employed at a Minot hospital.

In its order for judgment, the district court made a roughly equal division of the marital property, taking into account the debts assessed to James and Judy. The district court found an award of rehabilitative spousal support appropriate, and ordered James to pay one half of Judy's educational expenses incurred in securing a bachelor's degree in nursing. The court limited this obligation to a period of five years and a total of $5,000. The court also ordered James to pay Judy unconditional alimony of $200 per month for 60 months.

On appeal, James challenges the award of rehabilitative spousal support to a spouse who is gainfully employed, and the trial court's designation of the monthly payments as "alimony."[1]

A trial court's determination of spousal support is a finding of fact, and will not be set aside on appeal unless clearly erroneous. *Ness v. Ness*, 467 N.W.2d 716 (N.D.1991). A finding of fact is clearly erroneous when the reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, *State ex rel Younger v. Bryant*, 465 N.W.2d 155 (N.D.1991), but we will not reverse the trial court merely because we may have viewed the evidence differently. *Id.* When the court's reasons are fairly discernible by deduction or reason from the findings set down, and those reasons are supported by the law and the record, we will not upset an award of spousal support merely because the findings could have been more complete. *Ness v. Ness, supra.*

James's primary argument rests on the literal application of our frequent statement of the purpose of rehabilitative spousal support, which "is awarded to provide an opportunity for a disadvantaged spouse to seek education, training, or experience that will enable the spouse to become self-sup-

---

1. "Alimony" does not have a technical meaning in North Dakota and may mean "any payment to be made to the other spouse for any purpose, including payment as a part of a property division, spousal support, or child support or a combination of any of them." *Lipp v. Lipp*, 355 N.W.2d 817, 820 (N.D.1984). On this record and in the context in which it was used, we conclude that the trial court intended the award of "alimony" as rehabilitative spousal support.

porting." *Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). He argues that a trial court must make a finding that a spouse is "disadvantaged" before it can fashion an award for rehabilitative support; because Judy is already self-supporting, James contends she is not "disadvantaged."

We have, however, also described the purpose of rehabilitative support in terms of enabling a disadvantaged spouse to achieve "suitable" and "appropriate" self-support. *E.g. Bullock v. Bullock*, 376 N.W.2d 30, 31 (N.D.1985) [*citing* O'Kelly, *Three Concepts of Alimony in North Dakota Law*, 1 N.D. Faculty J. 69, 75 (1982)]. Accordingly, we have affirmed as appropriate awards of rehabilitative spousal support under a variety of circumstances which relate to the disadvantaged spouse's capacity for self-support. Continuance of a standard of living is a valid consideration in spousal support determinations, *e.g. Bagan v. Bagan*, 382 N.W.2d 645 (N.D.1986), as is balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard, *e.g. Weir v. Weir*, 374 N.W.2d 858 (N.D.1985). The trial court may consider the disparate earning capacity of the parties, *e.g. Pfliger v. Pfliger*, 461 N.W.2d 432 (N.D.1990); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and should make a support determination consonant with the property distribution as the illiquidity or the lack of income producing capacity of property may work a disadvantage to one spouse, *Pfliger v. Pfliger, supra.*

Of particular significance to James's contention are cases affirming rehabilitative spousal support awards to parties that have foregone opportunities or lost advantages as a consequence of the marriage, *e.g. Ness v. Ness, supra*, and to parties that have contributed during the marriage to the supporting spouse's increased earning capacity, *e.g. Hanson v. Hanson*, 404 N.W.2d 460 (N.D.1987). The need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution. Rather, rehabilitative spousal support must serve one of the legitimate goals for such an award and be supported by the record.

The trial court found that James "has attained the pinnacle of academic achievement in his chosen field." His two graduate degrees were earned during the marriage. The marital estate was depleted by $19,000 in furtherance of James's education. Judy took six years off from work to raise the children, and moved with James as he went back to school. Judy is a "diploma registered nurse," and as a consequence has limited options within her field. The court further found that there was a disparity between James's and Judy's earning capacities and vested retirement benefits. James earned over $1,000 more per month than Judy, and James was 100 percent vested in his retirement plan while Judy was vested only as to her mandatory contributions. While the trial court did not expressly find that Judy was disadvantaged as a result of the divorce, it did find that rehabilitative support was appropriate. On the record of this case, that finding of appropriateness necessarily implies a finding that Judy was disadvantaged. Accordingly, the trial court awarded to Judy monthly payments over a period of years, and gave her the option of upgrading her professional status by requiring James to reimburse Judy for 50 percent of costs for tuition, texts, and required fees paid by Judy while pursuing a bachelor's degree in nursing. Reviewing this record, we are not left with a definite and firm conviction that a mistake has been made.

The judgment and order of the district court are affirmed.

ERICKSTAD, C.J., LEVINE, J., VERNON R. PEDERSON, Surrogate Judge, and BENNY A. GRAFF, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

BENNY A. GRAFF, District Judge, sitting in place of GIERKE, J., disqualified.